COASTAL PRODUCTION SERVICES, INC.; Forest Oil Corporation; Ace American Insurance Company, Petitioners,

v.

Terry W. HUDSON; Director, Office of Worker's Compensation Programs, U.S. Department of Labor, Respondent.

No. 06–60766.

United States Court of Appeals, Fifth Circuit.

May 8, 2009.

Christopher Leonard Zaunbrecher (argued), Briney & Foret, Lafayette, LA, for Petitioners.

Arthur Joseph Brewster (argued), Law Office of Arthur J. Brewster, Metairie, LA, for Hudson.

Matthew W. Boyle (argued), Barry H. Joyner, Mark Ambrose Reinhalter, Richard Anthony Seid, Donald Shire, U.S. Dept. of Labor, Thomas O. Shepherd, Jr., Clerk, Benefits Review Bd., Washington, DC, David Duhon, U.S. Dept. of Labor, Employment Standards Admin., New Orleans, LA, for Director, Office of Worker's Comp. Programs, U.S. Dept. of Labor.

*ON PETITION FOR REHEARING AND REHEARING EN BANC.*

(Opinion Jan. 14, 2009, 5th Cir., 555 F.3d 426).

Before WIENER, DeMOSS, and PRADO, Circuit Judges.

PER CURIAM:

The Petition for Rehearing is DENIED and the court having been polled at the request of one of the members of the court and a majority of the judges who are in regular active service and not disqualified not having voted in favor, (FED. R. APP. P. and 5TH CIR. R. 35) the Petition for Rehearing En Banc is also DENIED.

DeMOSS, Senior Circuit Judge, joined by JERRY E. SMITH, Circuit Judge, dissenting from the denial of rehearing en banc:

In our opinion, the en banc court has missed an opportunity to correct a serious misapplication of our Longshore and Harbor Workers Compensation Act (LHWCA) jurisprudence. The dissent previously elaborated on the flaws in the panel majority's opinion. *See Coastal Prod. Servs. v. Hudson,* 555 F.3d 426, 441–52 (5th Cir. 2009) (DeMoss, J., dissenting). In this dissent from the denial of rehearing en banc, we want to briefly explain why the panel majority's opinion fundamentally misinterprets the significance of *Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985).

I.

The dispute in this case focuses on whether Hudson was injured on a LHWCA situs. The situs designation of the fixed production platform is determined through reference to the type of work that is performed upon it. *See* 33 U.S.C. § 903(a). In *Texports Stevedore Co. v. Winchester,* a longshoreman was injured in a gear room that contained equipment used to load vessels. 632 F.2d 504, 507 (5th Cir.1980) (en banc). The en banc court in *Winchester* held that the gear room where the longshoreman was injured was a covered situs. *Id.* at 515–16. However, the situs designation of the fixed production platform in this case should not be controlled by the result in *Winchester.* Because the gear room's only purpose was to facilitate the loading and unloading of vessels, *Winchester*'s holding that the gear room was a covered situs is not controversial. In contrast, the fixed production platform where Hudson was injured contained saltwater pumps, heater treaters,

compressors, and dehydrators, which was equipment used to separate oil, gas, and salt water.

*Winchester* provides the generic legal test for determining whether a site qualifies as an "adjoining area" under § 903(a). The perimeter of an adjoining area "is defined by function," and it must be "customarily used for significant maritime activity." *Id.* at 515. Five years after *Winchester* was decided, *Herb's Welding* clarified that a fixed production platform is never the site of significant maritime activity, so it can never qualify as a maritime situs under the LHWCA.

## II.

In *Herb's Welding*, the Supreme Court reviewed the legislative history of the 1972 amendments to the LHWCA and concluded that "the 1972 Congress at least did not intentionally extend the LHWCA to workers such as Gray." 420 U.S. at 420, 95 S.Ct. 1066. "With the 1953 passage of the Lands Act, Congress extended LHWCA coverage to oil workers more than three miles offshore." *Id.* at 419, 95 S.Ct. 1066 (citing 43 U.S.C. § 1333(b)). "[U]ntil 1972 the LHWCA itself extended coverage only to accidents occurring on navigable waters, and because stationary rigs were considered to be islands, oil rig workers inside the 3–mile limit were left to recover under state [worker's compensation] schemes." *Id.* at 419, 95 S.Ct. 1066 (internal citations omitted). In 1972, Congress amended the LHWCA to include the current situs and status requirements. *Id.* at 419–20, 95 S.Ct. 1066. As the Supreme Court stated in *Herb's Welding*, the LHWCA "does not mention offshore drilling rigs or the workers thereon ... although early in the legislative process, a bill was introduced to extend the Act to all offshore oilfield work-

ers." *Id.* "The bill died in Committee." *Id.*

If Congress had intended the 1972 amendments to extend coverage to workers injured on fixed production platforms in state waters, then the separate bill extending the Lands Act's application of the LHWCA to those same platforms would have been redundant. *See id.* Only the amendments to the LHWCA survived the legislative process, so it is reasonable to assume that Congress did not intend that the amended LHWCA would extend to oilfield workers injured on fixed production platforms in state waters. In 1953, when Congress expanded the scope of LHWCA coverage to oilfield workers injured on the Outer Continental Shelf, it did so explicitly. *See* 43 U.S.C. § 1333(b). Nevertheless, the panel majority in *Hudson*, through an expansive reading of the residual category of § 903(a), has extended LHWCA coverage beyond what Congress most likely intended when it amended the Act in 1972.

## III.

In *Herb's Welding*, the Supreme Court declared that oil and gas production is "not even suggestive of traditional maritime affairs." *Herb's Welding*, 470 U.S. at 422, 105 S.Ct. 1421 (citing *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 360–61, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969)). Because it "would extend coverage to virtually everyone on the stationary platform," the Supreme Court rejected as "untenable" the position that offshore drilling is maritime commerce. *Id.* at 421, 105 S.Ct. 1421. After *Herb's Welding*, this circuit has consistently held that oilfield workers injured on fixed production platforms in state waters were outside the scope of LHWCA coverage.[1] *See, e.g., Munguia v.*

---

1. Prior to *Hudson*, we found that an oilfield worker injured in state waters was entitled to LHWCA coverage in only one rare situation.

*See Bienvenu v. Texaco, Inc.*, 164 F.3d 901, 908 (5th Cir.1999) (en banc) (oilfield worker

*Chevron USA, Inc.,* 999 F.2d 808, 813 (5th Cir.1993) (oilfield worker does not satisfy the status test); *Thibodeaux v. Grasso Prod. Mgmt.,* 370 F.3d 486, 493–94 (5th Cir.2004) (fixed production platform does not satisfy the situs test).

*Herb's Welding* ultimately held that a welder responsible for general maintenance on a fixed production platform in state waters was not engaged in maritime employment under 33 U.S.C. § 902(3). 470 U.S. at 427, 105 S.Ct. 1421. Nineteen years later, based largely on *Herb's Welding,* we concluded that a fixed production platform connected to satellite wells was not a maritime situs under 33 U.S.C. § 903(a). *Thibodeaux,* 370 F.3d at 494. Fixed production platforms located in state waters *"are* islands," and "it has not been suggested that workers on islands are covered by the amended LHWCA." *Herb's Welding,* 470 U.S. at 422 n. 6, 105 S.Ct. 1421 (emphasis in original). "In light of the [LHWCA]'s origin and aim, it would be incongruous to extend it to cover accidents on structures serving no maritime purpose." *Thibodeaux,* 370 F.3d at 491. The panel majority should have reconciled *Winchester* and *Herb's Welding* and held that the fixed production platform where Hudson was injured is not a maritime situs.

### IV.

Since the time he was injured, Hudson has received Louisiana worker's compensation benefits, but he wanted a second bite at the apple and ultimately claimed benefits under the LHWCA. The Administrative Law Judge, the Benefits Review Board, and the panel majority concluded: (1) because Hudson spent less than 10% of his time loading oil from the Cherokee onto a transport barge, he satisfied the status requirement of the LHWCA, even though he was not engaged in loading

actually injured while on a vessel in navigable

activity at the time of his injury; and (2) the fixed production platform was an "adjoining area" used for loading a vessel, even though oil and gas production was the only activity that occurred upon it. The net effect of these holdings will be to give every oilfield worker injured on a fixed production platform in state waters a theory to claim LHWCA benefits in addition to state worker's compensation benefits and in direct contravention of the Supreme Court's holding in *Herb's Welding.*

For the foregoing reasons, we respectfully dissent from the denial of rehearing en banc and urge the appellants in this case to apply for a writ of certiorari to the Supreme Court. Likewise, we urge the Supreme Court to grant such writ of certiorari and once again correct the error of this court as to the applicability of the LHWCA to oil and gas production activities in state waters. *See Herb's Welding, Inc. v. Gray,* 703 F.2d 176 (5th Cir.1983), *rev'd* 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985).